# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-1579

ANNETTE B. BRILEY, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before KASOLD, *Chief Judge*, and HAGEL and LANCE, *Judges*.

# O R D E R

On May 18, 2011, the appellant, widow of deceased veteran Richard R. Briley, through counsel, filed a Notice of Appeal from a January 31, 2011, Board of Veterans' Appeals (Board) decision denying entitlement to service connection for the veteran's colon cancer for the purposes of accrued benefits. On February 7, 2012, appellant's counsel notified the Court that the appellant died on January 29, 2012, provided a copy of the appellant's obituary, and filed a motion requesting a 30-day stay to locate a potential accrued benefits claimant for substitution. On March 14, 2012, the Court denied the motion as moot as more than 30 days had already elapsed and ordered appellant's counsel to show cause, within 14 days, why the appeal should not be dismissed. Appellant's counsel did not respond to the Court's order.

In *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990), the Court chose "to adhere to the case or controversy jurisdictional restraints adopted by Article III Courts." Although the Court initially adopted the case-or-controversy requirement "as a matter of policy," the Court, as our concurring colleague admits, did not make the application of that requirement discretionary. *Id*. at 15. Rather, beginning with *Mokal* and continuing unimpeded to this day, the Court has steadfastly held that a matter before this Court that does not present a live case or controversy must be dismissed for a lack of jurisdiction. *See, e.g.*, *Mendoza v. Shinseki*, 25 Vet.App. 189 (2012) (per curiam order); *Moore v. Peake*, 22 Vet.App. 239 (2008) (per curiam order); *Hyatt v. Peake*, 22 Vet.App. 211 (2008); *Nolan v. Nicholson*, 20 Vet.App. 340 (2006); *Ramsey v. Nicholson*, 20 Vet.App. 223 (2006); *Polovick v. Nicholson*, 24 Vet.App. 257 (2006); *Urban v. Principi*, 18 Vet.App. 143 (2004) (per curiam order); *Long v. Principi*, 17 Vet.App. 555 (2004); *Breeden v. Principi*, 17 Vet.App. 475 (2004) (per curiam order); *Herlehy v. Principi*, 15 Vet.App. 33 (2001) (per curiam order); *Hibbard v. West*, 13 Vet.App. 546 (2000) (per curiam order); *Haines v. Gober*, 10 Vet. App. 446 (1997) (per curiam order); *Hudgins v. Brown*, 8 Vet.App. 365 (1995) (per curiam order); *Landicho v. Brown*, 7 Vet.App. 42 (1994); *Shoen v. Brown*, 6 Vet.App. 456 (1994); *Dofflemyer v. Brown*, 4 Vet.App. 339 (1993) (per curiam order); *Coombs v. Principi*, 3 Vet.App. 530 (1992) (per curiam order); *Waterhouse v. Principi*, 3 Vet.App. 473 (1992); *Bond v. Derwinski*, 2 Vet.App. 376 (1992) (per curiam order); *Mokal*, 1 Vet.App. at 15.

This Court has long grappled with the question of whether a live case or controversy exists after an appellant dies. *See, e.g.*, *Breedlove v. Shinseki*, 24 Vet.App. 7, 14-22 (2010); *Pekular v. Mansfield*, 21 Vet.App. 495, 498-502 (2007); *Landicho*, 7 Vet.App. at 49-54. However, we need not venture down that tortuous path again. For the purposes of this opinion, it is sufficient to observe that Mrs. Briley died while her appeal was pending before this Court and no one who would be potentially eligible to receive accrued benefits has sought substitution. It is beyond axiomatic that, where there is no appellant, there is no case or controversy. To hold otherwise would be to empower the Court to issue advisory opinions that have no definite and concrete connection to the legal relations of the putative parties. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937) (explaining that a justiciable controversy "must be definite and concrete, touching the legal relations of parties having adverse legal interests" and "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts"); *see also GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 382 (1980) ("The purpose of the case-or-controversy requirement is to 'limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.'" (quoting *Flast v. Cohen*, 392 U.S. 83, 85 (1968))). Such a practice would contravene the venerable principle that federal courts are not "merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding," and the Court, therefore, will not condone it. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982). Instead, the Court will reiterate its unflinching adherence to the jurisdictional limitations contained in Article III, which "assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of judicial action." *Id.* at 472.

Moreover, contrary to our concurring colleague's opinion, the decision of the U.S. Supreme Court in *Henderson v. Shinseki*, 131 S. Ct. 1197 (2011), did not in any way alter the Court's case-or-controversy analysis. In *Henderson*, the Supreme Court held that 38 U.S.C. § 7266(a), which provides that a person adversely affected by a final Board decision must file a Notice of Appeal within 120 days after the mailing of that decision to obtain review in this Court, was "an important procedural rule," but was not jurisdictional. 131 S. Ct. at 1206. In doing so, the Supreme Court clearly indicated that our authority must be based on what Congress intended and, therefore, did not enlarge our jurisdiction beyond that expressly given to us by Congress. *See id.* at 1203 ("The question here, therefore, is whether *Congress mandated* that the 120–day deadline be 'jurisdictional.'" (emphasis added). In fact, the Supreme Court has long held that federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted). Our concurring colleague fails to cite any authority suggesting that Congress, in creating this Court, intended to except it from the bedrock principle that courts may not issue advisory opinions in the absence of a live case or controversy. Accordingly, because the holding in *Henderson* only addressed the narrow question of "whether a veteran's failure to file a [N]otice of [A]ppeal within the 120-day period should be regarded as having 'jurisdictional' consequences,"

2

131 S. Ct. at 1200, and because it reaffirmed the principle that our power is defined by Congress's intent, that decision does not undermine *Mokal* or its progeny.

Finally, although our concurring colleague cites *Padgett v. Nicholson*, 473 F.3d 1364 (Fed. Cir. 2007), to support his assertion that the Court could have issued a decision in this case *nunc pro tunc* to the date of Mrs. Briley's death, *Padgett* expressly states that *nunc pro tunc* relief would not be appropriate in a case such as this. Specifically, the U.S. Court of Appeals for the Federal Circuit rejected the Secretary's argument that "*nunc pro tunc* relief may cause the court to issue advisory opinions or decide hypothetical cases," holding that, "[if] the court were not aware of any potential accrued-benefits claimants, or if all potential accrued-benefits claimants failed to qualify," the only appropriate disposition would be to dismiss the appeal and vacate or reverse the underlying decision. *Id.* at 1371. Consequently, because this appeal has become moot by virtue of the death of the appellant, and because the Court has not received any request that another party be substituted for the appellant, the appeal will be dismissed and the underlying Board decision vacated. *See Breedlove v. Shinseki*, 24 Vet.App. 7, 21 (2010) (noting that where "no one seeks substitution . . . Board vacatur and dismissal of the appeal would be the appropriate action"); *Landicho*, 7 Vet.App. at 53-54. Upon consideration of the foregoing, it is hereby

ORDERED that the January 31, 2011, Board decision is VACATED with respect to the matters appealed to the Court. It is further

ORDERED that this appeal is DISMISSED for lack of jurisdiction.

DATED: April 19, 2012                                              PER CURIAM

KASOLD, *Chief Judge*, concurring in part:

Inasmuch as counsel for the deceased appellant failed to respond to an order to show cause why the appeal should not be dismissed, I concur in now dismissing the appeal. Dismissal, however, should be for failing to respond, U.S. VET. APP. R. 38(b) ("Failure . . . to comply with an order of the Court . . . may be grounds for . . . dismissal of the appeal."), not for lack of jurisdiction.

Our jurisdiction, like that of all federal courts other than the Supreme Court, is established solely by Congress, not the Court. *Sheldon v. Sill*, 49 U.S. 441, 449 (1850). As my colleagues seem to admit, the requirement in our Court for a case or controversy is an important prudential rule wisely adopted by the Court in its formative year, but it is not in our jurisdictional statute. *See Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) (adopting "as a matter of policy the jurisdictional restrictions of the Article III case or controversy rubric"); *see also Padgett v. Nicholson*, 473 F.3d 1364, 1370 (Fed. Cir. 2007) (noting that this Court is "not formally bound by" the case or controversy requirement but "nevertheless, adheres to it"). Accordingly, although application of the case or controversy requirement is not discretionary absent *Mokal* being overturned by the en banc Court or statute, *Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992), dismissal under this important prudential rule nevertheless is not a dismissal for lack of jurisdiction. 49 U.S. at 449; *cf. Henderson*

3

*v. Shinseki*, 131 S. Ct. 1197, 1206 (2001) (finding that 38 U.S.C. § 7266(a) was an "important procedural rule" but not jurisdictional); *see also Breedlove v. Shinseki*, 24 Vet.App. 7, 17 n.5 (2010) (per curiam order) (citing *Zevalkink v. Brown*, 102 F.3d 1236, 1244 (Fed. Cir. 1996) and noting that the Court does not lack jurisdiction upon the death of the claimant).

Indeed, in addition to dismissing the appeal, the Court also had the option of rendering a decision nunc pro tunc. *See Mitchell v. Overman*, 103 U.S. 62, 64-65 (1880) (noting the authority of a court to issue a decision nunc pro tunc generally, and specifically when death occurs after the matter has been submitted and any delay in issuing the decision was not due to the parties); *Padgett*, 473 F.3d at 1367 ("Where a party dies after his case is submitted, but before the opinion issues . . . , the Supreme Court has consistently entered judgment *nunc pro tunc* to the date of the party's death . . . ."). The appellant in this case died after the case was submitted, *see Breedlove*, 24 Vet.App. at 18 (noting that case is submitted for decision "upon completion of the briefing period"), and, although the attorney for the deceased appellant did not respond to the Court's show cause order, the decedent's estate, at a minimum, is a potential accrued benefits beneficiary, 38 U.S.C. § 5121(a)(6), such that issuance of a decision nunc pro tunc was a viable option. *See Padgett*, 473 F.3d at 1371 (finding dismissal appropriate "if the court were *not* aware of any *potential* accrued-benefits claimants" (emphasis added)); *see also Mitchell*, *supra*.

Moreover, an accrued benefits beneficiary has up to one year after date of death of a VA beneficiary to request substitution, 38 U.S.C. § 5121A(a)(1), such that – even after dismissal in this case – there very well might be judicial economy reasons to permit an accrued benefits beneficiary to seek substitution within the one-year period after the death of the appellant and prior to mandate entering in this case. *See Breedlove*, 24 Vet.App. at 17 (noting that substitution "'furthers judicial and administrative economy'" (quoting *Padgett*, 473 F.3d at 1370)).

As noted at the outset of my concurring statement, however, the failure of counsel to respond to the Court's order is a valid basis for dismissing this matter at this time, and it is the basis for my concurrence in part with the order issued today by the majority.